UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
MOSTAFA AHMED, a/k/a MIKE FARAG,

                       Plaintiff,

                                        05 Civ. 2652 (PKC)

                                        MEMORANDUM
                                        <u>AND ORDER</u>

        -against-

HEARTLAND BREWERY L.L.C., JON BLOOSTEIN
and CARL CLEMENTS

                       Defendants.
--------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

          Plaintiff Mostafa Ahmed, represented by counsel, brings this action against his

former employer, Heartland Brewery ("Heartland"), Heartland's Chief Executive Officer

("CEO"), Jon Bloostein and the General Manager of the Union Square location where plaintiff

was employed, Carl Clements.  Plaintiff asserts that defendants fired him on the basis of his age

in violation of federal and state law.  The Verified Complaint in this action was filed on March 8,

2005 and assigned to the late Honorable Richard Conway Casey.  It was reassigned to me on

May 31, 2007.

          The parties have now filed cross-motions for summary judgment.  Defendants

contend that plaintiff can neither provide any direct evidence of discrimination nor establish a

prima facie case of discrimination.  Even if plaintiff is able to establish a prima facie case,

defendants assert that they have offered legitimate, nondiscriminatory, reasons for plaintiff's

termination and that plaintiff, in response to the motion, has failed to come forward with

evidence that these reasons are pretextual.  Plaintiff opposes defendants' motion and has offered

his own summary judgment motion on all claims.  In addressing defendants' motion, I have

considered only plaintiff's version of the facts and such other facts as are not disputed by the plaintiff. For the reasons discussed below, defendants' motion is granted in full and, consequently, plaintiff's motion is denied.

A.     <u>BACKGROUND</u>

Plaintiff is an Egyptian male born on March 10, 1956. (Ahmed Dec. ¶ 5)  In January 2004, plaintiff responded to an ad in a newspaper which indicated that there was a manager's position available with Heartland which is a brewery and restaurant chain. (Ahmed Dep. 40)  The specific restaurant was not indicated in the advertisement. (Ahmed Dep. 40) Plaintiff applied for the position and received a phone call from a "young lady", plaintiff could not recall who, setting up an interview with Richard Pietromonaco, Heartland's Director of Operations. (Ahmed Dep. 41)  The interview, which took place in January 2004, consisted of general questions about plaintiff's resume and work experience. (Ahmed Dep. 42-43)  No comment was made about plaintiff's age at the interview.  Plaintiff interviewed with Heartland employees a total of five more times, meeting again with Pietromonaco, then Bloostein, then Clements, then Kelly Taylor, one of the bar tenders and managers at the Union Square location, and Gary Tripp and finally with Bloostein a second time. (Ahmed Dep. 50-61; Bloostein Dep. 8-11)  Plaintiff described all of the interviews as being similar and noted nothing remarkable about any of them. (Ahmed Dep. 50-58)  At the final interview with Bloostein on March 15, 2004, plaintiff was offered and accepted the job of floor manager at the Union Square location. (Ahmed Dec. ¶ 4)  Plaintiff was 48 years old at the time that he was hired. (Ahmed Dec. ¶ 5) Bloosetin and Pietronmonaco were in their 40s and Clements was 26. (Bloostein Dep. 18, 26; Celments Dep. 17)

Plaintiff began working a day or two following his hiring. (Ahmed Dep. 68)  He did not receive a formal training manual but was instead told that he would have on-the-job training.  During plaintiff's first day on the job, either Clements or Diane Esquival, the other floor manager at the Union Square location, walked plaintiff around the restaurant, showing him the checklist of opening and closing duties for which all floor managers were responsible.  These duties included opening the restaurant's safe, handling the cash, counting the change box in the safe, managing the point of sale functions, supervising the staff, interacting with customers and running the bar and restaurant areas. (Ahmed Dep. 61, 77-80; Clements Dep. 18-19)  Plaintiff served as a floor manager for approximately two weeks before being discharged on March 31, 2004.  Plaintiff contends that at his termination, Clements told him that "most of the staff are women in their twenties and the customers are young and he could not fit me in." (Ahmed Dec. 7)

Following his discharge, plaintiff tried to contact both Bloostein and Pietromonaco to protest his firing.  On April 28, 2004, plaintiff wrote Bloostein a letter objecting to his firing and, citing Clements' statement on March 31, accusing Heartland of having terminated him due to his age. (Ahmed Dec. 9; Duhan Dec. Exh. B)  Plaintiff also requested reinstatement to the floor manager position.  Heartland responded in a letter dated May 4, 2004, asserting that plaintiff had been fired for performance related reasons and declining to reinstate plaintiff. (Dunhan Dec. Exh. A)  In July 2004, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Ahmed Dec. 10; Duhan Dec. A) Heartland did not respond to plaintiff's filing with the EEOC.  On November 30, 2004, the EEOC issued a determination that, in light of plaintiff's submissions and the lack of a rebuttal submission by Heartland, plaintiff had established a prima facie case of discrimination. (Dunhan

Dec. Exh. H)  The EEOC letter invited Heartland to participate in the conciliation process which Heartland did not.  On December 13, 2004, the EEOC issued a right to sue letter. (Dunhan Dec. Exh. I)  Plaintiff then timely filed his Complaint on March 8, 2005.

The Verified Complaint asserts claims for relief under Title VII of the Civil Rights Act of 1964, 42 U.S .C. §§ 2000e et seq., as amended by the Civil Rights Act of 1991, ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 et seq., ("ADEA"), New York Executive Law § 296 and New York City Administrative Code § 8-107. The Verified Complaint sets forth the essence of the facts outlined above.  He asserts that at his termination on March 31, 2004, Clements told him that he did not "fit in" at Heatland as "most of the staff . . . were in their twenties and that the customers were young." (Compl. ¶ 16) Plaintiff also alleges that during his time at Heartland, his performance was issued a favorable rating by defendants. (Compl. ¶ 19)  Plaintiff therefore contends that he was unlawfully discharged by defendants due to his actual or perceived age in violation of state and federal laws prohibiting age discrimination in employment. (Compl. ¶¶ 14; 21)  Plaintiff seeks a judgment directing defendants to take actions to eliminate their unlawful employment practices as well as compensation for his lost wages, emotional and mental distress, compensatory damages and attorneys fees and costs for this action. (Compl. ¶¶ a-i)

B.    SUMMARY JUDGMENT STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  It is the initial burden of a movant on a summary judgment motion to come forward with evidence on each material element of his claim

or defense, demonstrating that he or she is entitled to relief.  A fact is material if it "might affect the outcome of the suit under the governing law . . . ."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The evidence on each material element must be sufficient to entitle the movant to relief in its favor as a matter of law.  Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).

When the moving party has met this initial burden and has asserted facts to demonstrate that the non-moving party's claim cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts asserted by the movant.  Fed. R. Civ. P. 56(e).  In raising a triable issue of fact, the non-movant carries only "a limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'"  Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (quoting Aslandis v. United States Lines, Inc., 7 F3d 1067, 1072 (2d Cir. 1993)).

An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.  The Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party."  Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995) (quotations and citations omitted); accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).  In reviewing a motion for summary judgment, the court must scrutinize the record, and grant or deny summary judgment as the record warrants.  Fed. R. Civ. P. 56(c).  A verified complaint is treated as an affidavit for summary judgment purposes, and is

therefore considered in determining whether material issues of fact exist, provided that it meets

the other requirements for an affidavit under Rule 56(e). <u>Colon v. Coughlin</u>, 58 F.3d 865, 872

(2d Cir. 1995)(citing Fed. R. Civ. P. 56(e)).  Mere "conclusory statements, conjecture, or

speculation by the party resisting the motion will not defeat summary judgment." <u>Kulak v. City

of New York</u>, 88 F.3d 63, 71 (2d Cir. 1996) (citing <u>Matsushita Elec. Indus. Co.</u>, 475 U.S. at

587)); <u>see</u> <u>also</u> <u>Anderson</u>, 477 U.S. at 249-50 (noting that summary judgment should be granted

if the evidence is "merely colorable" or "not significantly probative").  When cross-motions for

summary judgment are made, the standard is the same as that for an individual motion, however,

"each party's motion must be examined on its own merits, and in each case all reasonable

inferences must be drawn against the party whose motion is under consideration." <u>See</u> <u>Morales v.

Quintel Entm't, Inc.</u>, 249 F.3d 115, 121 (2d Cir. 2001).  In the absence of any disputed material

fact, summary judgment is appropriate.  Fed. R. Civ. P. 56(c).

   Although discrimination claims typically involve questions of intent, which are

ill-suited to resolution at the summary judgment stage, the Second Circuit has gone "out of [its]

way to remind district courts that the 'impression that summary judgment is unavailable to

defendants in discrimination cases is unsupportable.'" <u>Weinstock v. Columbia Univ.</u>, 224 F.3d

33, 41 (2d Cir. 2000) (quoting <u>McLee v. Chrysler Corp.</u>, 38 F.3d 67, 68 (2d Cir. 1994)), <u>cert.

denied</u>, 540 U.S. 811 (2003).  <u>See also</u> <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133,

148 (2000) ("[T]rial courts should not treat discrimination differently from other ultimate

questions of fact.")(internal quotations omitted).

  C. <u>DISCUSSION</u>

   Title VII prohibits discrimination on the basis of "race, color, religion, sex, or

national origin."  The language of the ADEA "is identical to that found in § 703(a)(2) of the

Civil Rights Act of 1964" but for the addition of age to the list of characteristics for which

discrimination is prohibited. Smith v. City of Jackson, Miss., 544 U.S. 228, 233 (2005).  While

the acts share similar language and claims under them are analyzed under the same framework,

see Woodman v. WWOR-TV, Inc., 411 F.3d 69, 76 (2d Cir. 2005), the statutes are not

coextensive.  Here, plaintiff has failed to allege that he was discriminated against on the basis of

his race, color, religion, sex or national origin.  Rather, he has solely alleged discrimination on

the basis of age.  While such an allegation may form the basis for a viable claim under the

ADEA, it does not for a Title VII claim.

     Plaintiff also asserts claims under the ADEA, the New York State Human Rights

Law ("NYSHRL"), N.Y. Exec. Law § 296, and the New York City Human Rights Law

("NYCHRL"), N.Y. Admin. Code § 8-107.  The ADEA forbids employers from discharging an

employee on the basis of that employee's age. See 29 U.S.C. § 623.  The ADEA protects

individuals who are over 40 years of age at the time they suffer adverse employment action. 29

U.S.C. § 631(a).  The NYSHRL makes it unlawful for an employer "to discriminate against [an]

individual in promotion, compensation or in terms, conditions, or privileges of employment,

because of such individual's age." N.Y. Exec. Law § 296 3-a.  The NYCHRL is substantively

similar and prohibits identical conduct. N.Y. City Admin. Code § 8-107(1)(a).  As the Second

Circuit has stated "[a]lthough there are differences between the [NYSHRL], the [NYCHRL] and

the federal Age Discrimination in Employment Act ("ADEA"),  age discrimination suits brought

under the [NYSHRL] and [NYCHRL] are subject to the same analysis as claims brought under

the ADEA." Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001)(citations

omitted).  Accordingly, I will address plaintiff's claims under the ADEA, NYSHRL and

NYCHRL together.

Claims under the ADEA are analyzed under one of two frameworks.  Where there is evidence of direct discrimination or a "mixed motive" discharge, which occurs where both legitimate and illegitimate reasons for an employee's termination are taken into account by the employer, the governing analysis is set forth in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), superseded by statute on other grounds, Civil Rights Act of 1991, Pub.L. No. 102-166; 105 Stat. 1074; see Rose v. N.Y. City Bd. of Educ., 257 F.3d 156 (2d Cir. 2001)(applying Price Waterhouse analysis to ADEA claim).  If a plaintiff establishes that the adverse employment action was motivated, at least in part, by a discriminatory reason, the burden is then shifted to the employer to demonstrate that it would have taken the same action irrespective of the illegitimate motivation. Price Waterhouse, 490 U.S. at 258.  However, "[t]o warrant a mixed motive burden shift, the plaintiff must be able to produce a 'smoking gun' or at least a 'thick cloud of smoke' to support his allegations of discriminatory treatment." Raskin v. Wyatt Co., 125 F.3d 55, 61 (2d Cir. 1997)(citations omitted).  "Evidence potentially warranting a Price Waterhouse burden shift includes, inter alia, policy documents and evidence of statements or actions by decisionmakers that may be viewed as *directly reflecting* the alleged discriminatory attitude." Raskin, 125 F.3d at 60-61(citations and quotations omitted).  The comments of an individual without direct authority to discharge a plaintiff may constitute evidence of discriminatory motivation where a plaintiff demonstrates that there is a nexus between the allegedly discriminatory statements and a defendant's decision to discharge the plaintiff. See Silver v. North Shore Univ. Hosp., 2007 WL 1464600 (S.D.N.Y. May 21, 2007); Zhang v. Barr Labs., Inc., 2000 WL 565185, at *4 (S.D.N.Y. May 8, 2000) (citing cases).  However, such a conclusion is proper only where the commenting individual "had enormous influence in the decision-making process" associated with plaintiff's termination. See, e.g., Rose, 257 F.3d at 162.

The only potential evidence in the record of direct discrimination is the statement Clements allegedly made to Ahmed at the time of Ahmed's discharge.  Clements, however, was not the decision maker in regard to the determination to discharge plaintiff.  Bloostein, Heartland's CEO, testified at his deposition that he was the ultimate decision maker regarding all firings, including the specific decision to fire plaintiff. (Bloostein Dep. 14, 42)  Further, Clements testified that in regard to the determination to fire plaintiff, "ultimately Jon and Rich decided to make that decision and I carried it out."  (Clements Dep. 14)  Clements was only the messenger when it came to plaintiff's discharge and there is insufficient evidence to permit a jury to conclude that Clements had substantial input into Bloostein's decision to discharge Ahmed.  Other than Clements' alleged statement to plaintiff, there is no evidence in the record of direct discrimination and therefore no issue of triable fact on that question.  As plaintiff has failed to come forward with any smoking gun or cloud of evidence, a direct evidence or mixed motive analysis is unwarranted. Cf. North Shore, 2007 WL 1464600.

Additionally, I note that even were I to conclude that Clements' comment could be taken as sufficient evidence of direct discrimination to satisfy plaintiff's burden as to the first requirement of Price Waterhouse, I conclude that, for the reasons discussed below, defendants have come forward with sufficient evidence demonstrating that they would have taken the same action against plaintiff irrespective of his age.  Therefore, summary judgment is appropriate under the Price Waterhouse analysis.

Because I have concluded that there is no evidence of direct discrimination, in order to survive the motion for summary judgment, plaintiff must withstand the tripartite burden-shifting analysis laid out by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Under the McDonnell Douglas framework:

> [A] plaintiff first bears the minimal burden of setting out a prima
> facie discrimination case, and is then aided by a presumption of discrimination
> unless the defendant proffers a legitimate, nondiscriminatory reason for the
> adverse employment action, in which event, the presumption evaporates and the
> plaintiff must prove that the employer's proffered reason was a pretext for
> discrimination.

McPherson v. N.Y. City Dep't of Educ., 457 F.3d 211, 215 (2d Cir. 2006) (internal citations and

quotations omitted).  A prima facie case of discrimination requires a plaintiff to show that: "1) he

was within the protected age group; 2) he was qualified for the position; 3) he was subject to an

adverse employment action; and 4) the adverse action occurred under circumstances giving rise

to an inference of discrimination." Terry v. Ashcroft, 336 F.3d 128, 137-138 (2d Cir. 2003)

(internal quotation omitted).  In regard to a plaintiff's qualifications, the plaintiff need only show

that he or she was minimally qualified for the position. Owens v. N.Y. City Hous. Auth., 934

F.2d 405, 409 (2d Cir. 1991), cert. denied, 502 U.S. 964 (1991).

If defendant is then able to come forward with evidence of a legitimate,

nondiscriminatory reason for the adverse employment action, the presumption of discrimination

"drops out of the picture." St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993).  The

evidence produced by the defendant need not be ultimately persuasive in order to rebut the legal

presumption of discrimination raised by the plaintiff's prima facie case. Id. at 509.  Following

such a showing by a defendant, a plaintiff must do more than "contradict[ ] the employer's given

reason." James v. N.Y. Racing Ass'n, 233 F.3d 149, 154 (2d Cir. 2000)  At that point, a plaintiff

cannot overcome a motion for summary judgment unless he produces admissible evidence

"show[ing] that the articulated non-discriminatory reason for defendant's action is in fact a

pretext for discrimination." McDonnell Douglas, 411 U.S. at 804-05.  While discriminatory

"stray remarks, even if made by a decision maker, do not constitute sufficient evidence [to

support] a case of employment discrimination", when there are "other indicia of discrimination,"

the remarks are not considered stray and may be used to conclude that the employer's

nondiscriminatory reasons are pretextual. Danzer v. Norden Sys., Inc., 151 F.3d 50, 56 (2d Cir.

1998) (citing Woroski v. Nashua Corp., 31 F.3d 105, 109-10 (2d Cir. 1994)).

      a.   Plaintiff Has Made Out A Prima Facie Case of Age Discrimination

      On the record before me, I conclude that plaintiff has established a prima facie

case of discrimination.  It is uncontested that plaintiff, at age 48 at the time of the incident, is

within the age group protected by the statute.  In regard to the second requirement, there is little

evidence in the record regarding whether plaintiff was qualified to hold the floor manager

position.  However, plaintiff does state in his papers that he has 12 years of work experience

prior to his employment at Heartland and deposition testimony that plaintiff has worked for at

least one restaurant prior to Heartland. (Pl. Mem in Opp. at 8; Clements Dep. 8-9)  Further, while

Bloostein may have had reservations in hiring plaintiff as there was a "hole" in plaintiff's resume

prior to his joining Heartland, (Bloostein Dep. 10-15), defendants do not now contest that

Plaintiff was initially qualified to hold his position.  In regard to the third requirement, plaintiff

was uncontrovertibly subject to adverse employment action when he was fired.  Finally, taking

into consideration Clements' statement to plaintiff at the time of plaintiff's discharge, the

statement by Bloostein that the clientele at the Union Square location is "younger" than other

locations, (Dunhan Dec. Exh. E), and the allegations of the Verified Complaint, I conclude that

plaintiff has presented evidence sufficient to warrant the conclusion that the circumstances

surrounding his firing give rise to an inference of discrimination.  Based upon the foregoing, I

conclude that plaintiff has demonstrated a prima facie case of discrimination.  The burden now

shifts to defendants to come forward with a legitimate, nondiscriminatory reason, and supporting

evidence, for plaintiff's discharge.

     b.  <u>Defendants Have Articulated A Legitimate, Nondiscriminatory Basis For</u>
<u>Plaintiff's Discharge</u>

       Defendants contend that plaintiff was discharged because he failed to adequately perform job requirements.  In support of this assertion, defendants contend that plaintiff had difficulty opening the restaurant safe, failed to exchange larger bills for smaller bills in the registers, made an error counting the money in the safe and failed to exercise proper management skills in an incident where a customer got into a confrontation with a Heartland hostess. (Clements Dep. 9-14; Bloostein Dep. 43-44; Ahmed Dep. 93-95)  The reasons articulated by defendants are neither related to plaintiff's age nor to any other impermissible basis for termination and therefore constitute legitimate, nondiscriminatory reasons for plaintiff's discharge.  Having concluded that defendants have articulated a legitimate, nondiscriminatory reason for plaintiff's discharge, the burden therefore shifts back to the plaintiff to demonstrate that the reasons identified by defendants are pretextual or serve as proxies for defendant's age.

     c.  <u>Plaintiff Has Failed To Demonstrate Pretext</u>

       Plaintiff has had a full and fair opportunity to conduct discovery in this action and has failed to provide any evidence demonstrating that defendants' reasons for his discharge are pretextual.  Rather, plaintiff merely asserts in a conclusory fashion that "if this Court should determine [that defendants have articulate a legitimate non-discriminatory reason], Plaintiff has shown such reasons to be nothing more than a pretext to cover Defendants' discriminatory conduct." (Mem. in Opp. at 7)  However, plaintiff has acknowledged that in the two weeks he was employed by Heartland, he had difficulty opening the safe at times, he was $50 short in his counting of the registers one evening and that, on at least one occasion, he forgot to exchange the large bills in the bartender's cash drawers for small ones. (Ahmed Dep. 93, 103-106)  Plaintiff's admissions are corroborated by the testimony of Clements and Bloostein. (Clements Dep. 9-14;

- 13 -

Bloostein Dep. 43-44)  Plaintiff's contention that there was a positive comment in the manager's log book regarding his performance is inadequate evidence of pretext as plaintiff concedes that there was a counterbalancing negative comment regarding plaintiff's performance.[1] (Ahmed Dep. 93)  Additionally, while I take as true plaintiff's allegation that Clements told him that "most of the staff are women in their twenties and the customers are young and he could not fit me in" and do not discount this comment as a stray remark, I nevertheless conclude that Ahmed has failed to demonstrate that the reasons articulated for his discharge by defendants are pretextual or that his dismissal was motivated, at least in part, by his age.

        Additionally, this is a circumstance in which the "same actor" inference is warranted.  The same actor inference arises from the rationale that "when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire." Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d Cir. 1997); see also Schnabel v. Abramson, 232 F.3d 83, 91 (2d Cir. 2000).  While such an inference may not be warranted in all cases, it is in cases such as this one, "especially . . . when the firing has occurred only a short time after the hiring." See Grady, 130 F.3d at 560.  Bloostein, the individual ultimately responsible for all hiring and firing decisions, is the person who offered plaintiff the position and who ultimately told Clements to discharge plaintiff.[2]  (Bloostein Dep. 14, Celements Dep. 14)  Further, Clements, plaintiff's direct supervisor was initially supportive of plaintiff's hiring and later his

---

[1] I also decline to draw any adverse inference from defendants' inability to produce the manager's log book as plaintiff has failed to come forward with any evidence that defendants, acting "with a culpable state of mind", either knowingly or negligently destroyed or lost the manager's log book. See Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107-08 (2d Cir. 2002).

[2] I note that at the time Bloostein hired plaintiff, he assumed that plaintiff was around 46 years old. (Bloostein Dep. 18)

discharge. (Clements Dep. 7, 14-15) No reasonable jury could conclude on the evidence before the Court on this motion that plaintiff was terminated by defendants on the basis of his age.

D.      CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted. Plaintiff's motion for summary judgment is denied. The Clerk shall enter judgment in favor of defendants.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
      July 24, 2007